UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| MONICA GARCIA, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. C-09-334 |
| | § | |
| LCS CORRECTIONS SERVICES, INC., *et al*, | § | |
| | § | |
| Defendants. | § | |

## ORDER GRANTING PLAINTIFF'S MOTION TO REMAND

**I.**   **Factual and Procedural Background**

Now before the Court is Plaintiff's Motion to Remand (Doc. 12).[1] This is a wrongful death and survival action brought by Plaintiff Monica Garcia, individually and as representative of the estate of Mario A. Garcia ("Mr. Garcia"), and as next friend of Mr. Garcia's ten-year-old son, P.G., against Defendants LCS Corrections Services, Inc. ("LCS"), Miguel Niderhauser, and Dr. Michael Pendleton. (Doc. 19). Plaintiff's factual allegations consist of the following. On December 31, 2008, after pleading guilty to a federal offense, Mr. Garcia was remanded to federal custody for suicide watch at Brooks County Detention Center in Falfurrias, Texas, where he died on January 12, 2009. *Id.* The detention center is a private prison operated by LCS, and Niderhauser was the warden at the prison, and Dr. Pendleton a physician there, at the time of Mr. Garcia's death. *Id.* At the time he was remanded to custody, Mr. Garcia had a known seizure disorder for which he was taking medication prescribed to him by his personal physician. *Id.* Mr. Garcia suffered from seizures and headaches while at the prison and was transported to

---

[1] Also pending are Defendant Dr. Michael Pendleton's and Defendant Miguel Niderhauser's respective Rule 12(b)(6) Motions to Dismiss. (Docs. 24, 32). The Court need not rule on these Motions, as the presence of properly joined Defendant Dr. Pendleton in this case requires remand.

1 / 10

Christus Spohn Hospital in Kingsville, Texas, where "it was noted that the private prison had stopped Mr. Garcia's medications." *Id.* The hospital released Mr. Garcia with instructions given to the prison guards to continue his medications, including his seizure medication. *Id.* As described more fully *infra*, Plaintiff seeks to recover against Defendants on the grounds that their negligent and grossly negligent acts or omissions caused Mr. Garcia's death. *Id.*

Plaintiff originally filed this cause in the 79th Judicial District Court, Brooks County, Texas, on November 2, 2009, and amended her petition on November 4, 2009. (Doc. 1, Ex. 1-B). On December 2, 2009, LCS removed the action to federal court on the grounds that Plaintiff improperly joined in-state Defendants Niderhauser and Dr. Pendleton to defeat diversity jurisdiction. (Doc. 1). Absent the joinder of these Defendants, it is undisputed that the parties are diverse in citizenship and that the Court has jurisdiction over the case. (Docs. 1, 12, 16, 20, 25, 29, 34); *see* 28 U.S.C. §§ 1332, 1441. Plaintiff now moves to remand, claiming that Niderhauser and Dr. Pendleton are proper Defendants to Plaintiff's claims. (Doc. 12). As the removing Defendant, LCS contests remand and requests the dismissal of Plaintiff's claims against Niderhauser and Dr. Pendleton. (Docs. 16, 29).

## II. Plaintiff's Motion to Remand

### A. Improper Joinder

The doctrine of improper joinder constitutes a "narrow exception" to the rule of complete diversity, and the burden of persuasion on a party claiming improper joinder is a "heavy one." *Campbell v. Stone Ins.*, 509 F.3d 665, 669 (5th Cir. 2007)(quoting *McDonal v. Abbott Labs.*, 408 F.3d 177, 183 (5th Cir. 2005)). The Fifth Circuit has recognized two ways to establish improper joinder: (1) actual fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against the non-diverse defendant in state court. *Smallwood v. Ill.*

*Cent. R.R. Co.*, 385 F.3d 568, 573 (5th Cir. 2004)(en banc)(quoting *Travis v. Irby*, 326 F.3d 644, 646-47 (5th Cir. 2003)). Here, LCS has not claimed any actual fraud; therefore, this Court's inquiry is limited to whether a reasonable basis exists for predicting that Plaintiff might be able to recover against *either* of the in-state Defendants. *Id.*; (Docs. 1, 12, 16, 20, 25, 29, 34). "This means that there must be a reasonable possibility of recovery, not merely a theoretical one." *Ross v. Citifinancial, Inc.*, 344 F.3d 458, 462 (5th Cir. 2003)(emphasis omitted). The Fifth Circuit has likened this inquiry to the standard of review for evaluating a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). *Campbell*, 509 F.3d at 669; *Smallwood*, 385 F.3d at 573. In other words, the court considers the allegations of the complaint to determine whether the plaintiff states a claim under state law against the in-state defendant. *Smallwood*, 385 F.3d at 573. Ordinarily, no improper joinder exists if a plaintiff survives this Rule 12(b)(6)-type analysis. *Id.* However, in cases "in which a plaintiff has stated a claim, but has misstated or omitted discrete facts that would determine the propriety of joinder," the district court may, in its discretion, "pierce the pleadings" and conduct a summary judgment-type inquiry. *Id.* In determining whether improper joinder has occurred, the court must resolve contested fact issues and ambiguities in state law in favor of the plaintiff. *Travis*, 326 F.3d at 649.

**B.     Analysis**

Plaintiff's claims of negligence and gross negligence against all Defendants require a showing that (1) the defendant owed a legal duty to the plaintiff; (2) the defendant breached that duty; and (3) the defendant's breach proximately caused the plaintiff's damages. *See*, *e.g.*, *W. Invs. v. Urena*, 162 S.W.3d 547, 550 (Tex. 2005)(common law negligence); *Hamilton v. Wilson*, 249 S.W.3d 425, 426 (Tex. 2008)(medical negligence). The live pleading at the time of removal,

Plaintiff's First Amended Original Petition, alleged the following with respect to the elements of duty, breach, and proximate cause:

> 11. At the time of Mr. Garcia's incarceration, Defendants were responsible for providing for the medical needs of inmates at the Brooks County Detention Center.
>
> 12. Although Mario Garcia was on prescribed medication at the time of confinement, the Defendants intentionally refused him his medication, in deliberate indifference to his medical needs. Further, at the time that the Defendants knew that Mario Garcia's health was deteriorating, they denied him treatment.
>
> 13. The deprivation of proper medication and treatment posed an excessive risk which the medical staff of LCS knew. Prior to Mario Garcia's death, numerous people complained to the Defendants and the medical staff about Mr. Garcia's deteriorating condition and his lack of proper medication.
>
> 14. On January 12, 2009, Mario Garcia died while in confinement. The autopsy revealed that Mr. Garcia died as a result of seizures. The Defendants' violation of the proper standard of care and conscious indifference and willful neglect of Mr. Garcia's serious medical needs and refusal to allow him to have his medication was a direct and proximate cause of his death.

(Doc. 1, Ex. 1-B). Citing to the Texas Supreme Court's decision in *Leitch v. Hornsby*, 935 S.W.2d 114, 117 (Tex. 1996), LCS argued in its Notice of Removal that Niderhauser did not owe any duty to Mr. Garcia separate from the duties owed by his employer, as would be required to establish Niderhauser's individual liability. (Doc. 1). LCS also contended that Niderhauser had not personally engaged in any actionable conduct that was the legal cause of Mr. Garcia's injuries. *Id.* Therefore, Plaintiff had no possibility of recovery against this Defendant. *Id.* With respect to Dr. Pendleton, LCS appealed to a toxicology report incorporated into the autopsy of Mr. Garcia that allegedly demonstrated that the deceased had in fact received anti-seizure medication. *Id.*[2] LCS further claimed that Plaintiff had "no evidence to the contrary," and therefore this Defendant was also improperly joined. *Id.*

---

[2] LCS did not attach a copy of the report to the Notice of Removal.

In response, Plaintiff filed both the motion to remand now pending before this Court and a request for leave to amend her pleading to clarify her allegations of duty, breach, and proximate cause. (Docs. 11, 12). The Court granted leave, and Plaintiff now alleges the following with respect to Niderhauser and Dr. Pendleton:

> 12. Because Mr. Garcia was in confinement, Warden Niderhauser, Dr. Dr. Pendleton and other employees or agents of the Brooks County Detention Center had a duty to provide for Mr. Garcia's care. And, because he was in custody and unable to care for himself, Warden Niderhauser, Dr. Dr. Pendleton and other employees or agents at the Brooks County Detention Center had a higher duty of care than that owed to persons generally.
>
> 13. Warden Niderhauser, Dr. Dr. Pendleton, and other employees and agents at the Brooks County Detention Center breached their duty of care to Mario A. Garcia by failing to care for his medical needs. In particular, Defendants breached their duty of care by:
>
>     (a) failure to continue Mario Garcia's medications;
>
>     (b) failure to determine what Mario Garcia's medical condition was at the time he was placed in custody;
>
>     (c) failure to refer Mario Garcia for competent treatment when he continued to suffer seizures;
>
>     (d) failure to attend to Mario Garcia's needs when his condition was deteriorating;
>
>     (e) failure to properly diagnose Mario Garcia's medical condition and medical needs;
>
>     (f) failure to provide proper training to care for the medical needs of persons placed into custody at the Brooks County Detention Center;
>
>     (g) failure to have proper policies and procedures to care for the medical needs of persons who have chronic and/or ongoing medical issues and who are placed into custody at the Brooks County Detention Center.
>
> ….
>
> 16. Warden Niderhauser's negligence was a proximate cause of Mario Garcia's death, for which the Plaintiff sues.

> 17. Dr. Pendleton's medical malpractice was a proximate cause of Mario Garcia's death for which the Plaintiff sues. *See* TEX. CIV. PRAC. & REM. CODE § 74.001, *et seq.*

(Doc. 19).

**1. Dr. Pendleton**

Finding it dispositive of the motion to remand, the Court turns to the issue of whether one of the in-state Defendants, Dr. Pendleton, is a properly joined Defendant to the action. The Court first notes that the response by LCS to the motion to remand abandons any argument that the toxicology report, and Plaintiff's inability to controvert it, demonstrate improper joinder. (Doc. 16). In any event, these arguments are unavailing. If Plaintiff's claims against Dr. Pendleton can survive a Rule 12(b)(6)-type analysis, LCS can only show improper joinder by producing evidence to negate the possibility of liability on the part of Dr. Pendleton. *See Travis*, 326 F.3d at 650. LCS has not shown that the toxicology report negates *any* possible claim against Dr. Pendleton, and "simply pointing to the plaintiff's lack of evidence at this stage of the case is insufficient" to show improper joinder. *Id.* at 650-51.

Nonetheless, LCS continues to assert that Plaintiff improperly joined Dr. Pendleton because her claims against him cannot withstand a Rule 12(b)(6)-type challenge. (Docs. 16, 29). Rule 12(b)(6) allows for dismissal for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). In *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), the Supreme Court confirmed that Rule 12(b)(6) must be read in conjunction with Rule 8(a), which requires "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the…claim is and the grounds upon which it rests.'" *Id.* at 555 (quoting FED. R. CIV. P. 8(a); *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). "While a complaint attacked by a Rule 12(b)(6) motion does not need detailed factual allegations, a

plaintiff's obligation to provide the 'grounds' of his 'entitle[ment]' to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555 (internal citations omitted). To survive a motion to dismiss, a complaint must contain "enough factual matter (taken as true)" to state a claim for relief that is "plausible on its face." *Id.* at 556, 570.

Most recently, in *Ashcroft v. Iqbal*, 129 S.Ct. 1937 (2009), the Supreme Court explained that "[t]wo working principles underlie our decision in *Twombly*." *Id.* at 1949. "First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.* "Second, only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 1950. A claim has facial plausibility when the plaintiff pleads factual content that allows the court, drawing upon its "judicial experience and common sense," to reasonably infer that the defendant is liable for the misconduct alleged. *Id.* at 1949 (citing *Twombly*, 550 U.S. at 556), 1950. "But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 1950 (quoting FED. R. CIV. P. 8(a)(2)). In keeping with these principles, the Supreme Court in *Iqbal* set forth a "two-pronged" approach to considering Rule 12(b)(6) motions:

> [A] court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

*Id.* at 1950.

No party disputes that Plaintiff's claims against Dr. Pendleton constitute health care liability claims under Chapter 74 of the Texas Civil Practices and Remedies Code. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.001, *et seq.* (Vernon 2005); (Docs. 12, 16, 20, 24, 25, 29, 34). Chapter 74 defines a health care liability claim, in relevant part, as "a cause of action against a…physician for treatment, lack of treatment, or other claimed departure from accepted standards of medical care…, which proximately results in injury to or death of a claimant, whether the claimant's claim or cause of action sounds in tort or contract." TEX. CIV. PRAC. & REM. CODE ANN. § 74.001(13) (Vernon 2005). The claims against Dr. Pendleton sound in negligence, and it is LCS's contention that Plaintiff's "seven bare-boned allegations of negligence and one-sentence generic allegation of causation" fail to state a facially plausible claim for relief against this Defendant. (Doc. 29). In so arguing, LCS ignores the additional, factual allegations that the Court must consider in conducting its Rule 12(b)(6) analysis. Those allegations are that Mr. Garcia had a known seizure disorder, for which he was taking medication prescribed to him by his personal physician, when he was remanded to the custody of Brooks County Detention Center. Mr. Garcia suffered from seizures and headaches while at the prison, necessitating a trip to the hospital where it was determined that the prison had stopped his medications. The hospital discharged Mr. Garcia with instructions given to continue his medications. Shortly thereafter, he died. Against the "framework" of Plaintiff's allegations of negligence in the provision of medical treatment to Mr. Garcia, and proximate cause, these factual allegations are enough to state a facially plausible claim for relief against Dr. Pendleton, allegedly the physician at the prison at the time of Mr. Garcia's death.

Both LCS and Dr. Pendleton further assert that Dr. Pendleton must be dismissed as a Defendant to this action in light of Plaintiff's failure to comply with a specific procedural

requirement for Chapter 74 claims. (Docs. 16, 24, 29). The Court recognizes that a plaintiff asserting a health care liability claim must serve an expert report on the defendant physician or his attorney within 120 days of filing suit or face the dismissal of her claim with prejudice upon the motion of that defendant. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.351 (Vernon 2005). As set forth in Dr. Pendleton's motion to dismiss, Plaintiff first filed her health care liability claims against Dr. Pendleton in federal court on July 22, 2009 and then dismissed that cause and filed the current action in state court on November 4, 2009. (Doc. 24; Doc. 24, Exs. 1, 2, 4). Dr. Pendleton submits that Plaintiff failed to serve an expert report within 120 days of the initial filing and requests the dismissal of Plaintiff's claims against him on this basis. (Doc. 24; Doc. 24, Ex. 4). LCS also notes that Plaintiff has not served the expert report, although it does so to suggest that Plaintiff would have served the report "if [she] were serious about proceeding against Dr. Pendleton for some reason other than disrupting diversity jurisdiction." (Doc. 16). Upon review of the relevant case law, this Court cannot overlook that the vast majority of district courts have held that the expert report requirement does not apply in federal court. *See*, *e.g.*, *Politis v. Noblin*, 2009 WL 3761748, at *1 (S.D.Tex. Nov. 9, 2009); *Mason v. United States*, 486 F.Supp.2d 621, 623-626 (W.D.Tex. 2007); *Garza v. Scott & White Mem'l Hosp.*, 234 F.R.D. 617, 621-24 (W.D.Tex. 2005).[3] Therefore, this Court must find that the initial filing of suit in a federal forum did not start the 120-day clock, and the clock had not yet run in the current action when LCS removed it to federal court, where the rule does not apply. Given that Plaintiff's allegations against Dr. Pendleton otherwise state a plausible claim for relief, the Court must remand the case.

---

[3] Dr. Pendleton argues that the Court must dismiss the claims against him by citing to *Cruz v. Chang*, 400 F.Supp.2d 906, 915 (W.D.Tex. 2005), in which U.S. District Judge Kathleen Cardone concluded that the export report requirement did apply in federal court. (Doc. 24). However, in *Mason*, Judge Cardone reached the opposite conclusion "[i]n light of the recent change in law and the persuasive reasons provided by every district court in Texas to consider the issue." *Mason*, 486 F.Supp.2d at 625.

**2.     Attorney's Fees**

Finally, the Court notes that Plaintiff's motion to remand requests an award of attorney's fees, expenses, and costs under 28 U.S.C. § 1447(c) on the grounds that LCS lacked an "objectively reasonable basis" for removal. (Doc. 12); *see Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141 (2005). Given that the crux of Plaintiff's claims against Dr. Pendleton at the time of removal was the deprivation of medication, LCS reasonably relied on the toxicology report in initially asserting that Plaintiff had no possibility of recovering against Dr. Pendleton based on this theory of negligence. The Court allowed Plaintiff to clarify her allegations after removal, upon which LCS reasonably maintained that Dr. Pendleton was not a properly joined Defendant by appealing to the Supreme Court's recent clarification of the Rule 12(b)(6) standard. For these reasons, the Court concludes that Plaintiff does not merit an award of attorney's fees, expenses, or costs for improper removal.

**III.    Conclusion**

For the foregoing reasons, the Court finds that Plaintiff has stated a facially plausible claim for relief against Defendant Dr. Michael Pendleton. Therefore, the Court lacks diversity jurisdiction over the case and hereby **ORDERS** that Plaintiff's Motion to Remand is hereby **GRANTED** and the case hereby **REMANDED** to the state district court from which it came.

SO ORDERED this 24th day of May, 2010, at McAllen, Texas.

_____
Randy Crane
United States District Judge